ALFRED COOK & others *vs.* SOLOMON N. ADAMS.

Middlesex. March 15, 1897. — September 18, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, & LATHROP, JJ.

*Statute — Written Consent of Husband to Wife's Will — Ante-nuptial Agreement.*

There is no provision of statute which requires the consent of a husband to his wife's will to be written thereon, and such consent may be shown by an ante-nuptial agreement, executed by him, although it is inartificially drawn and its meaning is not free from doubt; and it is immaterial that the agreement contained no schedule of property, and was not recorded.

BILL IN EQUITY, filed May 15, 1896, permanently to enjoin the defendant from making any claim by petition or otherwise to the real or personal estate of Mary N. Adams, his wife, except as given to him in and by her last will and testament, in which he was named as one of four residuary legatees. Hearing before *Knowlton*, J., who reserved the case for the consideration of the full court.

*H. W. Chaplin,* (*A. D. Hill* with him,) for the defendant.

The agreement was, by Gen. Sts. c. 108, §§ 27, 28, void. This statute originated in St. 1845, c. 208. That act (§§ 1 and 2) provided that persons contemplating marriage might contract in writing that after the marriage the wife should continue to hold property possessed at the time of the marriage to her separate use; but that there should be annexed to the contract a schedule of the property, with a description " sufficiently clear to enable any creditor of the husband to distinguish it from all other property " ; that the contract and schedule should be recorded, and, if not so recorded, should be " void."

A failure to record made the contract absolutely void. *Ingham* v. *White,* 4 Allen, 412. *Butman* v. *Porter,* 100 Mass. 337. Colt, J., in *Jenkins* v. *Holt,* 109 Mass. 261, 262. *Deshon* v. *Wood,* 148 Mass. 132, 135 *ad fin.*

That statute, in dealing with ante-nuptial contracts, dealt only with property which was the wife's before marriage; and therefore, in so far as it contemplated and dealt with any loss of rights by the husband or his creditors, it dealt only with rights which would be his at the common law, upon marriage, but for the ante-nuptial contract. Those rights were the right to her personal estate, enjoyment of her real estate during coverture, curtesy,— all were subject to execution against the husband. *Divoll* v. *Leadbetter,* 4 Pick. 220. *Gardner* v. *Hooper,* 3 Gray, 398. *Mechanics' Bank* v. *Williams,* 17 Pick. 438. Chapman, J., *Staples* v. *Brown,* 13 Allen, 64, 65.

That St. 1845, c. 208, § 2, applied to survivorship rights was decided in *Butman* v. *Porter,* 100 Mass. 337, in which the defendant, a widow, alleged invalidity of an ante-nuptial contract, for lack of record. Her grounds necessarily were, that so much of the contract as was a relinquishment by the husband of rights in her property was within St. 1845, c. 208, §§ 1, 2, and was void for lack of record; that her relinquishment of survivorship rights in his property was dependent upon his release of such rights in her property, and that his release was void for lack of record. The contention was thus raised, and the court held that a husband's relinquishment of survivorship rights in his wife's property was within St. 1845, c. 208, §§ 1, 2, and that lack of record makes a contract absolutely void.

*Butman* v. *Porter* was not overruled by *Jenkins* v. *Holt*, 109 Mass. 261; for the point determined in *Butman* v. *Porter* was before the court in *Jenkins* v. *Holt* only in a secondary way.

St. 1867, c. 248, does not affect the result. The plaintiffs are not within it. The only parties as to whom a contract was, by that act, made valid without record, were " the parties . . . and their heirs and personal representatives." The plaintiffs are appointees under a power, and no one of these classes includes appointees. Appointees of a wife take title, not from her, but from her husband, the creator of the power, and *vice versa.* Validity is dependent upon both record and schedule. Record alone, without a schedule, would obviously be of no avail to satisfy the statute. A schedule, therefore, is essential to validity. St. 1867, c. 248, it will be observed, did not omit the requirement of a schedule.

*F. A. Perry*, also for the defendant, filed a brief.

*G. P. Wardner*, for the plaintiffs.

LATHROP, J. The plaintiffs are some of the devisees and legatees under the will of Mary N. Adams, who died on August 3, 1895, without issue. Her will is dated February 27, 1892, and has been duly admitted to probate. Before the filing of the bill, the defendant, who was the husband of Mary N. Adams, had petitioned the Probate Court to assign to him in fee real estate left by his wife to the amount of $5,000. He had also filed a waiver of the provisions of the will, and a claim to one half of her personal estate. See Pub. Sts. cc. 124, § 1; 135, § 3, cl. 3; and 147, § 6; Sts. 1882, c. 141, § 1; 1884, c. 301; 1885, c. 255; 1887, c. 290.

While under our statutes a will made by a married woman is valid, although her husband has not given his consent thereto, yet it is provided that such will shall not, without his written consent, deprive him of certain rights in the property left by the wife.

There is no provision of statute which requires the consent of the husband to be written upon the will. To show such consent, the plaintiffs rely upon the following ante-nuptial agreement, executed by the defendant:

" This indenture, made on the twenty-fourth day of July, A. D. eighteen hundred and sixty-seven, by Solomon N. Adams

of Beaufort in the County of Carteret and Commonwealth of North Carolina, witnesseth: that the said Solomon N. Adams covenants and agrees with Mary N. Adams, widow, of Chelsea, in the County of Suffolk and Commonwealth of Massachusetts, that in consideration of this, that, should the said Mary N. Adams become the wife of said Solomon N. Adams, all her property real and personal which she now has or may acquire and have while such married state continues, shall be, remain, and rest in her, to her sole and separate use and control forever, without let or hindrance from the said Solomon N. Adams, that she may dispose of the same by deed, grant, bargain, sale, gift, desire, will, or otherwise, as she may desire, without the consent, let, or hindrance of the said Solomon N. Adams; this indenture is considered a consent by the said Solomon N. Adams to any disposition by the said Mary N. Adams of any and all her property, real and personal, after she shall have married the said Solomon N. Adams, and a full compliance with the Massachusetts statute in that case made and provided. See Gen. Sts. c. 108, § 3. And the said Solomon N. Adams further agrees that in case any other writing after marriage should be necessary from said Solomon N. Adams in order that the said Mary N. Adams may convey and give a valid title to any or all of said property, real and personal, he will give such writing without cost or delay."

The first question which arises is as to the construction of this agreement. It is inartificially drawn, and its meaning is not free from doubt. We are of opinion, however, that the word " will " is used in its technical sense, as meaning a testamentary instrument, and that the word " desire " is a mistake for " devise." The preceding words, " deed, grant, bargain, sale, gift," are technical words, and there is no reason to suppose that the word " will " was used in any other sense. Construing the word " will " in this way, the subsequent language of the agreement cannot cut down what has already been consented to.

The remaining question is as to the effect to be given to the fact that the agreement contained no schedule of property and was not recorded. The law in force at the time the agreement was made is to be found in the Gen. Sts. c. 108, §§ 27, 28, and the St. of 1867, c. 248. Section 27 of chapter 108 allows a con-

tract to be made at any time before marriage by the parties thereto. Section 28 provides : " There shall be annexed to such contract a schedule of the property intended to be affected thereby, containing a sufficiently clear description of the property to enable any creditor of the husband or wife to distinguish it from all other property." There is a further provision that the contract and schedule shall be recorded within a certain time, and " if not so recorded the contract shall be void."

The St. of 1867, c. 248, which took effect on May 18 of that year, provided that no marriage contract should be invalid for failure to record the same, as provided in the Gen. Sts. c. 108, § 28, " as between the parties thereto, and their heirs and personal representatives."

The object of the Gen. Sts. c. 108, as pointed out by Mr. Justice Colt in *Jenkins* v. *Holt*, 109 Mass. 261, 262, so far as the schedule and recording are concerned, is to prevent creditors from being defrauded. The schedule is a mere incident of the contract for the greater protection of creditors. Where creditors are not concerned, the contract is not required to be recorded, since the St. of 1867, c. 248 ; and we see no reason why the absence of a schedule should render the agreement void as between the parties.

We are of opinion, therefore, that the plaintiffs are entitled to a decree according to the prayer of the bill.

*Decree accordingly.*